IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIFFANY M.,[1] | No. 6:22-cv-00850-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Katherine Eitenmiller
Brent Wells
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, OR 97401

    Attorneys for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204

Jacob Phillips
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Tiffany M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g)(incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI and DIB on March 7, 2017, alleging an onset date of July 30, 2016. Tr. 142.[2] Her applications were denied initially and on reconsideration.

On January 17, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 52-70. On February 21, 2019, the ALJ found Plaintiff not disabled. Tr. 139-57. The Appeals Council remanded the matter to the ALJ to review Plaintiff's residual functional capacity ("RFC"), to obtain updated information concerning Plaintiff's impairments, and to obtain evidence from a medical expert. Tr. 159-60.

On November 23, 2020, Plaintiff appeared with counsel for a hearing on remand. Tr. 39-51. On March 29, 2021, Plaintiff appeared with counsel for a continued hearing on remand. Tr. 71-114. On April 20, 2021, Plaintiff amended her alleged onset date to January 1, 2018. Tr. 404. On May 27, 2021, the ALJ found Plaintiff not disabled from January 1, 2018, through the date of the ALJ's decision, and, therefore, not entitled to benefits. Tr. 51-31. On June 13, 2022, Plaintiff appealed the ALJ's decision to this Court.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

**FACTUAL BACKGROUND**

Plaintiff alleges disability due to bi-polar disorder. Tr. 115. At the time of her amended alleged onset date, Plaintiff was 48 years old. Tr. 214. Plaintiff has a college degree. Tr. 409. Plaintiff has past relevant work experience as a cashier. Tr. 29.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff engaged in substantial gainful activity ("SGA") in 2019 and 2020. Tr. 18. Nevertheless, the ALJ noted Plaintiff's "earnings in 2018 were below SGA levels," and, therefore, there "has been a continuous 12-month period(s) during which [Plaintiff] did not engage in [SGA]." Tr. 19. Accordingly, the ALJ continued with the analysis. At steps two and three, the ALJ determined Plaintiff has the following severe impairments: "obesity; diabetes mellitus; myofascial pain; renal disease; depressive disorder; anxiety disorder; personality disorder; and peripheral neuropathy." *Id*. The ALJ, however, determined that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment during the relevant period. Tr. 20. The ALJ concluded Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> [She] can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The claimant can perform simple, routine tasks consistent with a reasoning level of one or two. The claimant can tolerate occasional contact with coworkers, supervisors, and the general public. The claimant cannot engage in team-based work or work requiring close collaboration. The claimant can tolerate occasional changes to work routines and

> processes. The claimant cannot engage in work that involves strict time pressures, such as conveyor belt work or work involving timed production quotas.

Tr. 23. At step four, the ALJ concluded Plaintiff cannot perform her past relevant work. Tr. 29. At step five, the ALJ concluded Plaintiff can perform other work in the national economy. Tr. 30. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)(internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's")(internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected the opinions of Leah Wright, LCSW; Maggie Drake, NP; and Stephen Rubin, Ph.D.; (2) partially rejected Plaintiff's testimony; and (3) partially rejected the lay-witness statements of Plaintiff's mother, Judith T.

5 – OPINION & ORDER

**I.    Medical Source Evidence**

Plaintiff contends the ALJ erred when he gave "limited weight" to the opinions of NP Drake, LCSW Wright, and Dr. Rubin.

**A.    Standards**

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2. The Social Security Administration notes:

> [M]edical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those non-acceptable medical sources include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-*6. The ALJ, however, must explain the weight

6 – OPINION & ORDER

assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.

With respect to "acceptable" medical sources social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). For applications filed before March 27, 2017, generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). More weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012. A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999).

    **B.**    **NP Drake**

On November 20, 2018, NP Drake completed a letter in which she noted she began treating Plaintiff on July 20, 2016 and sees Plaintiff every four months for "medication maintenance." Tr. 1137. Drake stated Plaintiff suffers from panic attacks, anxiety, and "depressed mood which inhibits her from working a full-time job." *Id*. Drake noted Plaintiff is able to work part-time with "the assistance of medications," but that working more than part time would "likely cause an exacerbation in her symptoms, worsening anxiety, mood, and panic attacks." *Id.*

The ALJ gave Drake's opinion "limited weight" stating Drake's "interactions with [Plaintiff], as well as her opportunity to observe [Plaintiff's] presentation are relatively limited." Tr. 26. The ALJ also stated Drake's treatment notes indicate Plaintiff has only moderate impairments, which is inconsistent with Drake's opinion but consistent with the RFC. Finally, the ALJ noted the limitations assessed by Drake are "entirely inconsistent" with her August 20, 2019, treatment note in which Drake stated Plaintiff "continues to work once a week at Taco Time but is now a caregiver for her mother through the state," but Plaintiff reported "generally . . . doing well, 'over the past year I have been more upbeat, more positive, easier to get along with. I haven't had a big blow-up with anybody in over a year.'" Tr. 1632. Plaintiff denied "any recent panic attacks and states that alprazoiam continues to help." *Id*.

The record reflects Drake had been treating Plaintiff for more than two years at the time she provided her opinion. Drake saw Plaintiff every four months for a total of six to eight visits, each lasting approximately 30 to 40 minutes. Drake, therefore, did not have a "limited" treating relationship with Plaintiff. In addition, although Drake's treatment notes occasionally reflect that Plaintiff's medications were helpful, they also indicated Plaintiff continued to suffer serious mental-health symptoms. For example, in February 2018 Plaintiff reported she had been "calm, not screaming and yelling," her overall mood was "pretty good," and she was "sleeping well." Tr. 1317. Plaintiff, however, also reported she had been "crying every night . . . for months." *Id*. In October 2018 Plaintiff stated that she "continued to work at Taco Time," and found her medications "continue[d] to be helpful for her mood an anxiety." Tr. 1321. Nevertheless, Drake noted Plaintiff "has experiences [*sic*] moments of anger, rage, [and] anxiety." Tr. 1321. In February 2019 Plaintiff reported continuing trouble sleeping and waking "feeling exhausted in the morning." Tr. 1579. Finally, although the ALJ noted Drake's opinion

8 – OPINION & ORDER

was "entirely inconsistent with" her August 2019 chart note, the record also contains numerous other chart notes in which Plaintiff experienced depression, anxiety, increased panic attacks, low energy, low mood, irritability, feelings of hopelessness, flashbacks, and passive thoughts of suicide as well as "crying spells" that lasted two or three days. *See, e.g.,* Tr. 1675, 1711, 1772, 1778, 1864, 1873, 1887, 1897.

The Court concludes the ALJ erred when he gave limited weight to Drake's opinion because the ALJ did not provide substantial and legitimate reasons for doing so based on substantial evidence in the record.

### B. LCSW Wright

On October 14, 2020, Wright completed a social security report in which she noted Plaintiff had been her patient since July 2019 and she saw Plaintiff twice a month for individual therapy sessions. Tr. 1808. Wright noted Plaintiff suffers from a mood disorder, generalized anxiety disorder with panic attacks, and PTSD. Plaintiff's symptoms include "mood lability; sudden, difficult to control crying spells on a nearly daily-basis; anger outbursts; low motivation and fatigue; lack of interest in daily activities; dysphoria; depression; feelings of hopelessness and worthlessness; hyper-vigilance and flashbacks; ruminating thoughts; insomnia; panic; trouble concentrating." *Id*. Wright stated "limits to [Plaintiff's] functioning and ability to engage in the workplace" include "difficulty maintaining a work schedule as a result of depression, ruminating thoughts and associated insomnia with significant fatigue; interpersonal difficulties and difficulty collaborating with others due to mood lability and severe anxiety" and concluded Plaintiff's "mental health symptoms significantly impair her ability to both seek and maintain gainful employment." *Id*.

On March 17, 2021, Wright completed a social security benefits questionnaire in which she noted Plaintiff's "clinical symptoms" include:

> mood lability; sudden and difficult to control crying spells; anger outbursts; irritability; low motivation and fatigue; lack of interest in daily activities; dysphoria; depression, feelings of hopelessness and worthlessness; hyper-vigilance; ruminating thoughts; sleep disturbances; panic; flashbacks and intrusive thoughts related to trauma; difficulty concentrating; difficulty attending to activities of daily living/basic tasks due to poor concentration/attention as a result of high anxiety and depression; anhedonia; diminished ability to concentrate and make decisions.

Tr. 1830. Wright noted "limits to [Plaintiff's] functioning and ability to engage in the workplace" include "significant fatigue and difficulty maintaining a work schedule as a result of depression, ruminating thoughts and associated sleep disturbances due to depression and PTSD; interpersonal difficulties and difficulty collaborating with others due to mood lability and severe anxiety." *Id*. Wright concluded Plaintiff's mental-health conditions "would likely interfere with her ability to sustain even a simple routine in a low stress job, even if it does not require frequent interactions with others" because "[t]he severe impairment she experiences, particularly due to depression and anxiety, negatively impacts her ability to maintain a basic routine, concentrate on simple tasks, or make seemingly straight-forward decisions under even limited pressure." *Id*. Wright also completed a Medical Source Statement in which she noted Plaintiff's symptoms of "impaired concentration and attention due to severe depression, anxiety, [and] PTSD" would "preclude[] performance for 15% or more of a 7.5 hour work day." Tr. 1833. In addition, Plaintiff's "severe anxiety, poor sleep + associated fatigue, severe depression resulting in low energy/impaired motivation, [and] PTSD symptoms causing significant emotional distress" would "cause a need to miss" more than four days of work per month. Tr. 1833-34.

10 – OPINION & ORDER

The ALJ gave Wright's opinion limited weight on the bases that Wright's treatment notes did not support "the extreme limitations offered" and the opinion is inconsistent with the record as a whole including the fact that Plaintiff provided health-care assistance to her mother. The ALJ noted, for example, that on December 2, 2020 Plaintiff reported she was "sleeping a lot better" and felt that the changes in her psychiatric medication had been "beneficial." Tr. 1855. The remainder of that chart note, however, reflects Plaintiff "remain[ed] overwhelmed with the day to day tasks of taking care of her elderly mother," cried every morning, and continued to have difficulties with depression and anxiety. *Id*. On December 23, 2020, Plaintiff reported having a "reduction in nightmares," but an increase in panic attacks and flashback episodes "related to her ex-husband." Tr. 1864. On January 31, 2021, Plaintiff reported "feel[ing] . . . in an emotional space where she feels she can manage her symptoms," that she was "managing her symptoms relatively well, . . . getting more sleep, and getting up earlier and feeling more productive." Tr. 1873. On February 10, 2021, however, Wright reported Plaintiff "generally . . . continu[es] to find the morning quite difficulty [*sic*], often waking up crying and crying for a few hours every morning." Tr. 1897. The record also reflects Plaintiff regularly reported daily crying spells with heightened anxiety and daily panic attacks. Tr. 1772, 1855, 1897. Plaintiff "catastrophize[d] and "perseverate[d]" on what was not going well in her life. Tr. 1797, 1855, 1872-73, 1898. In addition, despite ongoing treatment with Wright and complying with medication, Plaintiff experienced an increase in panic/flashback episodes and frequently presented as tearful, with a depressed/dysphoric and anxious mood. Tr. 1751, 1773, 1797, 1864, 1873, 1898.

The Court concludes the ALJ erred when he gave limited weight to Wright's opinion because the ALJ did not provide substantial and legitimate reasons for doing so based on substantial evidence in the record

### C.     Dr. Rubin

Dr. Rubin was called as a medical expert at the March 2021 hearing. He testified that he had reviewed Plaintiff's medical record and noted that although "it would be nice to have a full psychological or psychiatric evaluation . . . [he] did find a lot of information" from which he could offer an opinion. Tr. 85. Dr. Rubin opined Plaintiff suffers from a depressive disorder, an anxiety disorder, and PTSD. *Id*. Dr. Rubin testified that he did not "see . . . evidence supporting the depression disorder or the anxiety disorder as being severe." Tr. 86. Dr. Rubin noted "they are certainly troublesome[,] . . . [but] they are somewhat manageable [with] medication and counseling." *Id*. Dr. Rubin noted, however, that Plaintiff's PTSD "requires very specific treatment, I don't see at this point successful treatment of [it], so it's still an active process and causes her a lot of unhappiness." Tr. 86. Dr. Rubin stated Plaintiff's PTSD is severe and "would cause significant difficulties in working eight hours a day, five days a week." *Id*. Dr. Rubin conceded Plaintiff was working part time at Taco Time and taking care of her mother, but noted that "from all the evidence that I have . . . [Plaintiff] can't sustain the attention and concentration which would be required eight hours a day." Tr. 88. Dr. Rubin noted he did not "think [Plaintiff] could stay on task eight hours a day." *Id*. Dr. Rubin also opined Plaintiff's PTSD would cause her to miss more than four days of work per month and that "even [with] a simple, routine [job] she would be off task more than 15%." Tr. 87-88.

The ALJ gave Dr. Rubin's opinion limited weight. The ALJ noted Dr. Rubin relied on Wright's treatment notes in reaching his opinion, but in September 2020 Wright

12 – OPINION & ORDER

described Plaintiff has having only a history of PTSD and stated it was well-managed. Tr. 1748. The record, however, reflects that in later treatment notes Wright included PTSD as a current, ongoing problem. *See, e.g.,* Tr. 1785, 1789, 1852, 1856, 1870, 1895. In addition, in January 2021, Plaintiff discussed with Wright reducing her therapy sessions because she did not "feel[] . . . that she could explore her trauma history," while also dealing with anxiety related to her social security application "court date." Tr. 1873. The record also reflects that Plaintiff experienced an increase in panic attacks and flashbacks related to her PTSD. Tr. 1864, 1873.

On this record the Court concludes the ALJ erred when he gave limited weight to Dr. Rubin's opinion because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

## II.   Subjective Symptom Testimony

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "The ALJ 'engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.'" *Putz v. Kijakazi*, No. 21-35733, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022)(quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). First the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quotation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ

can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear[,] and convincing reasons for doing so." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(quotation omitted). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

On June 7, 2017, Plaintiff completed an Adult Function Report in which she noted she has days when she cannot leave the house, her anxiety "sometimes makes [her] feel . . . like [she] wants to scream and tear [her] skin off," she does not sleep well due to nightmares, she wears the same thing "for days," bathes once a week, brushes her hair once a week, she goes to the grocery store two-to-five times per week, does not balance her checkbook, gets distracted easily, has been fired "from many jobs," and sometimes feels suicidal. Tr. 428-35.

At the March 29, 2021, hearing Plaintiff testified she had to reduce the number of hours per day that she took care of her mother from four hours to two hours per day because she has "flashbacks . . . every hour and [she] has to remove [herself] to be alone because [she does not] want [her] family to know what happened to me and with the whole me too movement brought

14 – OPINION & ORDER

up a bunch of stuff." Tr. 83. Plaintiff stated she gets paid by the state to be her mother's caregiver, but she has "never used the max hours because [she] can't." Tr. 103. Nevertheless, Plaintiff lives with her mother and her mother is "an amputee [with] . . . lots of medical issues so if she need[s] something . . . [Plaintiff] would do [her] best to help." Tr. 102. Plaintiff noted that "with COVID going on" she and her mother are "kind of nervous about [having other people help with her mother] so [Plaintiff is] just doing the best [she] can, but . . . [she] just can't do four hours a day." Tr. 103. Plaintiff noted that the "supplemental" things that she does for her mother outside of the two hours per day that Plaintiff is paid to be her mother's caretaker include wound care and grocery shopping, but she is unable to scrub floors. Tr. 103-4.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. The ALJ noted that in contrast to Plaintiff's assertion that she bathes and combs her hair only once a week, no treatment notes indicated poor grooming or issues with hygiene. In addition, Plaintiff was able to work part time at Taco Time and to also care for her mother. Plaintiff indicated she has trouble interacting with the public and coworkers, but she has successfully worked at Taco Time as a cashier, a position that requires high public contact. In addition, treating psychologist Lindsey King repeatedly noted Plaintiff was able "to make appropriate social connections even when her "mood was reported and observed to be anxious and depressed." *See, e.g.,* Tr. 1248, 1253, 1255. Dr. King reported in January 2018 that Plaintiff completed the Personality Assessment Inventory ("PAI") "without difficulty. Tr. 1244. Dr. King noted Plaintiff "engaged in negative impression management. Her

15 – OPINION & ORDER

responses indicate that she may have attempted to portray herself in a negative or pathological manner in particular areas. Her scale elevations need to be interpreted with caution." *Id*.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear, and convincing reasons supported by substantial evidence in the record for doing so.

### III. Lay Witness Statement

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

On September 6, 2017 Plaintiff's mother, Judith T., completed a Third-Party Adult Function Report in which she stated Plaintiff has "difficulty communicating with others which leads to frustration + anger problems." Tr. 452. Judith T. noted Plaintiff does not sleep well and is "exhausted during the day," showers once a week, wears the "same clothes for weeks without washing," "does not communicate with family members," does not socialize, has been fired from "most jobs," cries daily, and does not handle stress well.

The ALJ gave some weight to Judith T.'s statements. Judith T.'s statements are substantially similar to Plaintiff's testimony. The Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided support for his opinion based on substantial evidence in the record. The Court also concludes on the same basis that the ALJ did not err when he partially rejected Judith T.'s statement.

**IV.     Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Generally, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (9th Cir. 2011). The Ninth Circuit, however, has established a limited exception to this general rule. *Id.* at 1138. Under the limited exception, the Court must grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

The Court has determined the ALJ erred when he improperly rejected the opinions of NP Drake, LCSW Wright, and Dr. Rubin. As noted, LCSW Wright opined that Plaintiff would be off task more than 15% of the workday and miss more than four days of work per month. Dr. Rubin testified that Plaintiff's PTSD would cause her to miss more than four days of work per month and that "even [with] a simple, routine [job] she would be off task more than 15%." Tr. 87-88. At the hearing the vocational expert ("VE") testified that missing four days of work

17 – OPINION & ORDER

per month or being off task more than fifteen percent of the workday would preclude competitive employment. Tr. 108, 110. After giving this evidence the effect required by law, the Court finds Plaintiff cannot work on a regular and continuing basis and, therefore, is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b)(RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The Court, therefore, concludes this matter should not be remanded for further proceedings. Accordingly, the Court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED:_____June 28, 2023\_\_\_\_\_

_____
MARCO A. HERNÁNDEZ
United States District Judge

18 – OPINION & ORDER